## McFARLAND v. UNITED STATES.

### No. 6990.

Circuit Court of Appeals, Ninth Circuit.

May 8, 1933.

H. Sylvester Garvin, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

Count I of the indictment charged that on March 31, 1932, in the city of Seattle, Wash., appellant "did then and there knowingly, wilfully, unlawfully, and feloniously, and not in the original stamped package, nor from the original stamped package, nor in pursuance of a written order form," purchase

85 grains of morphine, in violation of the Harrison Narcotic Act (26 USCA §§ 211, 691, et seq.). Count II charged appellant with receiving, concealing, buying, selling, and facilitating the transportation and concealment after importation of the same narcotics. The jury found appellant guilty as charged in count I and not guilty on count II.

From the testimony of the government's witnesses, which was evidently accepted by the jury, rather than the story of appellant, it appears that on several occasions shortly prior to the date alleged in the indictment Federal Narcotic Agents Cass and Talent gave marked money to an informer named Stewart, who in turn gave the money to one Rumbaugh, whereupon Rumbaugh would proceed, followed by the agents, to apartment O of the Yesler Apartments, which apartment was occupied by appellant. Shortly thereafter Rumbaugh would leave appellant's apartment and deliver a quantity of narcotics to Stewart, who in turn gave it to the agents. There is a porch along each of the floors of the Yesler Apartments and the apartments open thereon, which allowed the agents to easily observe Rumbaugh entering and leaving appellant's apartment. On some of these occasions, while Rumbaugh was in appellant's apartment, appellant was observed by the agents leaving his apartment and going to another portion of the building and then back. The narcotics were later found in this other portion of the building.

These transactions occurred on March 24, 25, 26, 28, and 30. On March 31, after the usual procedure of securing narcotics from Rumbaugh through the informer, and paying therefor with marked money, had taken place, the agents arrested Rumbaugh a few minutes after he had come out of appellant's apartment. Upon returning to the apartment to apprehend appellant, the agents observed him coming down the stairs, and told him he was under arrest. Appellant immediately retreated into his apartment and locked the door. The agents broke in, arrested appellant, and searched his person and the apartment, and found some of the marked money there. A search of the apartment failed to disclose any narcotics, until appellant took the agents to an attic in the building and revealed the hiding place. The agents had no warrant.

Appellant assigns as error (1) the overruling of a motion to suppress, made on the ground that the evidence was obtained through an illegal arrest and search; (2) the overruling of a challenge to the sufficiency of the evidence to sustain a conviction; (3) the admission in evidence of certain exhibits, consisting of several bindles of narcotics, some of which were obtained at the time of the arrest, and the others were purchased by Rumbaugh from appellant, and turned over to the agents through the informer, on the several dates mentioned prior to the arrest; (4) the admission of evidence relating to other purchases of narcotics from appellant by Rumbaugh, on the several dates preceding the arrest; (5) the refusal to give a requested instruction with reference to alleged coercion and intimidation which prompted appellant to disclose the hiding place of the narcotics.

■ The motion to suppress and the overruling of the challenge to the sufficiency of the evidence were properly denied. Appellant concedes that the facts and circumstances were sufficient to create suspicion in the minds of the agents, but contends that suspicious circumstances are insufficient to constitute probable cause, and that the agents had seen no act by appellant that would justify a belief that he had committed a felony. However, in our opinion, the repeated daily purchase of narcotics, apparently obtained from appellant, and the events leading up thereto, as planned and witnessed by the agents, together with all the other facts disclosed by the record, were sufficient to constitute probable cause and justify the arrest and search. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

■ It follows that the assignment relating to the admission in evidence of the bindles of narcotics seized at the time of the arrest is without merit.

■ The same may be said of the other exhibits or bindles complained of, which were purchased on the several occasions prior to the arrest, because there is no merit in the assignment relating to the other sales. See, from this court, Stubbs v. United States (C. C. A.) 1 F.(2d) 837; Casey v. United States (C. C. A.) 20 F.(2d) 752; Sargent v. United States (C. C. A.) 35 F.(2d) 344.

■ The remaining assignment relates to appellant's requested instruction that: "You are further instructed that if you find from the evidence that the defendant McFarland was coerced, intimidated or threatened by the officers of the United States at the time of his arrest into producing and handing over and delivering to them the narcotics alleged in the said indictment and you further find

that had it not been for the said coercion, threats and intimidation that he would not so have done, then and in that event you are instructed to return a verdict of not guilty."

The requested instruction relates to the bindles of narcotics seized at the time of the arrest, identified in the record as Exhibit 9. With reference thereto and as regards the manner in which it was obtained by the agents, the court instructed the jury as follows: "The court instructed you this morning that the Constitution provides that in no criminal case should an accused person be compelled to be a witness against himself. I told you that was not limited to putting him in a witness chair and asking questions, but from the time of his arrest he cannot be made lawfully a witness against himself, and that if he was coerced to any extent whatever by the officers into producing this morphine in Exhibit 9, or if he was cajoled, encouraged and believed it to be of advantage to him and his wife if he produced this morphine. Unless he was acting of his own free will, voluntarily, you will disregard the exhibit."

The instruction given embraces fully and fairly the one requested.

We find no error in the record, and the judgment is therefore affirmed.